IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Freddie Bradley, | ) | C/A No.: 1:15-4440-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Bryan Sterling, SCDC Director; | ) | REPORT AND RECOMMENDATION |
| Neana W. Staley, Warden at | ) | |
| Manning; Mr. Roberts, A/W at | ) | |
| Manning; Ms. Jeannie McKay, A/W | ) | |
| at Manning; and Dr. Valpey, SCDC | ) | |
| Doctor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Freddie Bradley ("Plaintiff"), proceeding pro se and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. while incarcerated at Manning Correctional Institution ("MCI") in the custody of the South Carolina Department of Corrections ("SCDC").   He sues SCDC Director Bryan Sterling; MCI Warden Neana Staley; MCI Associate Warden Roberts; MCI Associate Warden Jeannie McKay; and SCDC physician Dr. Valpey  (collectively "Defendants"). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings.

This matter comes before the court on Defendants' motion for summary judgment [ECF No. 33]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal and summary judgment procedures and the possible

consequences if he failed to respond adequately to Defendants' motion. [ECF No. 34].[1] The motion having been fully briefed [ECF Nos. 48–50], it is ripe for disposition. Having carefully considered the record in this case, the undersigned recommends the district judge grant Defendants' motion.

I.     Factual and Procedural Background

Plaintiff filed his complaint on October 29, 2015, alleging that he had a hernia that had increased in size. [ECF No. 1 at 3]. Plaintiff alleges he had been seen by MCI medical staff, but is constantly being denied medical treatment. *Id*. Plaintiff alleges that he has "a urinary difficulty that stems from the hernia" and that he should not be forced to pay for surgery when the SCDC has a budget to cover these expenses. *Id*. at 3–4.

Plaintiff was first evaluated at Turbeville Correctional Institution ("TCI") on June 27, 2012, and found to have a 3.5 cm umbilical hernia on his right side. [ECF No. 33-2 at 14]. He returned on September 12, 2012, for a follow up evaluation at TCI and reported no symptoms or problems with his hernia of any kind. *Id*. There were no further complaints of hernia issues noted in his medical records during his incarceration at TCI.

On June 30, 2014, Plaintiff was transferred from TCI to MCI and a medical clearance for transfer form was completed. *Id*. at 11. Plaintiff had no active problems as of the time of transfer. *Id*. On July 25, 2014, he was seen after he complained that his hernia was hurting when he lifted during his work in the kitchen. *Id*. at 10. Dr. Valpey

---

[1] Because Plaintiff failed to file a response to the motion for summary judgment by the deadline, the undersigned recommended his case be dismissed for failure to prosecute. Plaintiff filed a "motion of attachment" within the time for filing objections and the court construed this document as a response to Defendants' motion for summary judgment.

2

noted a longstanding, asymptomatic hernia and that no surgical repair was indicated at the time. *Id*. Plaintiff was again seen in August 2014 for complaints of pain while lifting and alleged that the hernia had become larger. *Id*. He also complained of having trouble urinating. *Id*. Plaintiff requested to be relieved of his kitchen duties and he was reclassified. *Id*. at 9–10.

On March 27, 2015, Dr. Valpey examined Plaintiff's hernia, noting that it was 3–4 cm. *Id*. at 9. Plaintiff complained of a slow urine stream and bowel problems. *Id*. Dr. Valpey noted that Plaintiff was dissatisfied, but that it was unclear what action he was seeking. *Id*. On April 15, 2015, Plaintiff was evaluated for his hernia and Dr. Valprey noted that the hernia had not changed in over a year. *Id*. at 8. Dr. Valprey also noted that Plaintiff wanted hernia surgery. *Id*.

On May 13, 2015, Plaintiff was evaluated after he complained of pain around his hernia and that it was getting bigger. *Id*. at 7–8. The hernia measured 3.5 cm and he was instructed to follow up if it changed or became symptomatic. *Id*. On August 10, 2015, Plaintiff was again evaluated for slow urination and a 3 cm umbilical hernia was again visualized. *Id*.

In January 2016 Plaintiff complained of an inability to urinate. *Id*. at 6. The medical records also state that Plaintiff reported having a subrapubic catheter placement in 1998 for the same problem, but that he could not recall the procedure performed. *Id*. Plaintiff was prescribed flowmax. *Id*. at 5.

On March 2, 2016, Plaintiff was again evaluated for problems urinating and his hernia. *Id*. The hernia had increased to 5 cm in size and Dr. Valpey referred Plaintiff for a

3

surgical consultation. *Id*. According to Star Connelly, R.N., Plaintiff's surgery was scheduled for May 19, 2016. [ECF No. 33-2 at ¶18]. Although it is not in the evidence in the record, no party has disputed that Plaintiff had the surgery as scheduled.

In response to the motion for summary judgment, Plaintiff alleges he was taken to the emergency room on July 27, 2016, and was seen by a urologist. [ECF No. 48 at 1–2]. Plaintiff states that a follow-up appointment with the urologist, in which he was supposed to have EKGs, x-rays, and lab studies, was scheduled for August 1, 2016, but that he was not taken to this appointment. *Id*. Plaintiff states that he was taken to Kershaw Correctional Institution ("KCI"), where Dr. Lee removed his catheter, but Dr. Lee did not provide any information about other tests. *Id*. at 3.

II.    Discussion

　　A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

4

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Analysis

1.     Medical Care

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments that "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the

> authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the Court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sosebee v. Murphy*, 797 F.2d 179, 182–83 (4th Cir. 1986).

Here, Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs. Plaintiff first complained about his hernia in March 2015. He was examined by Dr. Valprey, who noted that Plaintiff was dissatisfied, but that Plaintiff "goes on tangents with multisystem complaints" and that "his specific desire/request is not apparent." [ECF No. 33-2 at 9]. Less than a month later, Dr. Valprey noted that no surgical repair for the hernia was indicated at that time. *Id*. To the extent Plaintiff claims surgery was required for his hernia, he has failed to show that it was medically necessary prior to May 2016, when he was scheduled for surgery. The Constitution requires that prisoners be provided with a certain minimum level of medical treatment, but it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19, 2011)*; Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D. Kan. 1986). Plaintiff was scheduled for hernia surgery in May 2016.

Additionally, to the extent Plaintiff claims in his response and sur reply that Defendants have been deliberately indifferent to his serious medical needs by taking him to an SCDC urologist instead of a third-party urologist or by failing to provide him with x-rays, EKGs, and other testing, Plaintiff has failed to show that such testing is medically necessary.

7

Finally, to the extent Plaintiff asserts state law claims of medical malpractice, he has failed to comply with the requirements of S.C. Code Ann. § 15-36-100 and § 15-79-125, *et seq.*, for filing medical malpractice actions. Specifically, Plaintiff failed to contemporaneously file an expert witness affidavit prior to filing the complaint. Therefore, Defendants are entitled to summary judgment on any claim by Plaintiff of medical malpractice.

### 2.     Qualified Immunity

Defendants also argue they are entitled to qualified immunity from Plaintiff's lawsuit. [CF No. 33-1 at 3–7]. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

### 3. Supervisory Liability

Defendants Sterling, Staley, Roberts and McKay argue that they should be dismissed because they have only been sued in a supervisory capacity. The doctrine of *respondeat superior*, or supervisory liability, generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom that results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*,

9

690 F.2d 1133, 1142–43 (4th Cir. 1982).

Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985). Although Plaintiff alleges he showed Staley, Roberts, and McKay the hernia and they acknowledged surgery was needed [ECF No 1 at 3], Plaintiff has not shown that Sterling, Staley, Roberts, or McKay were personally responsible for his alleged injuries or tacitly authorized the actions or inactions of the medical staff. Therefore, the undersigned recommends Sterling Staley, Roberts and McKay also be granted summary judgment to the extent they are sued in their supervisory capacities.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 33] be granted.

IT IS SO RECOMMENDED.

December 20, 2016                                      Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

10

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).